FESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **FRANCISCO M. ESTRADA FERNÁNDEZ, F/E MEDICAL SERVICES GROUP, PSC**<br><br>Apelados<br><br>v.<br><br>**PLATINUM EMERGENCY GROUP, INC.; SALUD INTEGRAL EN LA MONTAÑA, INC.; UNIVERSAL INSURANCE COMPANY; COMPAÑÍA DE SEGUROS A**<br><br>Apelantes | KLAN202400703 | **APELACION acogido como CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Comerío**<br><br>Civil Núm.: **SJ2020CV03994**<br><br>Sobre: Incumplimiento de Contratos; Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

Comparece ante nos, Platinum Emergency Group, Inc. (Platinum o Peticionario), mediante *Apelación*, y nos solicita que revisemos la *Resolución* emitida el 13 de mayo de 2024 por el Tribunal de Primera Instancia, Sala Superior de Comerío (TPI).[1] Mediante dicha determinación, el TPI denegó la *Moción de Sentencia Sumaria* presentada por Platinum en cuanto a la causa de acción del doctor Francisco M. Estrada Fernández (Dr. Estrada).[2] Aclaramos que aunque el recurso apelativo fue presentado como una apelación, al recurrir de la denegatoria de una moción dispositiva, la misma será atendida como un *certiorari* conforme a

---

[1] Apéndice de *Apelación*, Anejo VII, págs. 611-639. Notificada y archivada en autos el 14 de mayo de 2024.
[2] *Íd.*, Anejo I, págs. 1-336.

Número Identificador
RES2024 _____

las Reglas 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, y 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40.

Por los fundamentos que discutiremos a continuación, resolvemos no ejercer nuestra discreción y denegamos expedir el recurso solicitado. Así, devolvemos el caso al TPI para la continuación de los procedimientos.

**I.**

El caso de autos originó el 31 de julio de 2020, luego de que el Dr. Estrada y F/E Medical Services Group, PSC (FE) (en conjunto, Demandantes) presentasen una *Demanda* sobre incumplimiento contractual en contra de Platinum, Salud Integral en la Montaña, Inc. (SIM) y sus respectivas compañías de seguros desconocidas (en conjunto, Demandados).[3] En la *Demanda*, el Dr. Estrada informó que FE es una entidad corporativa con personalidad jurídica para demandar y ser demandada, cuyo presidente y único accionista es el Dr. Estrada.[4] Alegó que entre FE y Platinum, existió un contrato mediante el cual FE proveía servicios médicos en las salas de emergencia de SIM.[5] Alegadamente, el 8 de abril de 2020, Platinum dejó sin efecto el contrato con FE, sin proveer causa que los justificara y sin notificación previa.[6] Alegó que la causa que ofreció Platinum se debió a:

> [U]na queja infundada y falsa de un paciente hacia Estrada, lo que originó una queja infundada y falsa de SIM contra Estrada. SIM solicitó la remoción de Estrada de las salas de emergencia y Platinum, luego de haber realizado una investigación en la cual concluyó *por escrito* que Estrada había actuado correctamente y conforme a los protocolos, [decidió] desprenderse de los servicios médicos de FE y Estrada.[7]

---

[3] *Íd.*, Anejo XI, págs. 646-649. (Los Anejos XI - XXVIII del recurso apelativo fueron incorporados al expediente mediante la moción *En Cumplimiento de Orden*, presentada conjuntamente por las partes el 12 de septiembre de 2024. Dichos Anejos continúan la enumeración de páginas del Apéndice de *Apelación*).

[4] *Íd.*, pág. 646.

[5] *Íd.*, pág. 647.

[6] *Íd.*

[7] *Íd.* (Énfasis en la original).

A base de esto, solicitó una compensación ascendente a $2,000,000.00 por los ingresos dejados de percibir y $100,000.00 en concepto de otros daños ocasionados a la reputación y por angustias mentales.[8]

Así las cosas, el 2 de octubre de 2020, Platinum presentó una *Moción de Desestimación al Amparo de la R. 10.2*, en la que le solicitó al TPI que desestimara la *Demanda* del Dr. Estrada y FE al esta no exponer una reclamación que justifique la concesión de un remedio.[9] Destacó que entre FE y Platinum no existía una relación contractual. "La única contratación de Platinum para brindar servicios médicos a la entidad SIM, es una contratación entre Platinum y el doctor Francisco M. Estrada Fernández, por lo que la entidad corporativa FE no tiene legitimación activa y forzosamente se debe desestimar la causa de acción de dicha entidad".[10] Por su parte, el 8 de octubre de 2020, SIM presentó su *Contestación a la Demanda*,[11] en la que afirmó que "no existe contrato entre FE Medical Services Group y Platinum"[12] y que "[n]o existe relación contractual entre la parte demandante y Salud Integral en la Montaña, Inc.[,] por lo que es improcedente alegar incumplimiento de contrato".[13]

El 2 de noviembre de 2020, los Demandantes presentaron una *Demanda Enmendada*[14] en la que aclararon que "[l]os demandantes son subcontratista[s] de Platinum que prestan servicios de médico en las localidades contratadas por Platinum, las que incluyen las localidades de SIM y de First Medical, entre otras".[15] "Lo anterior debido a que entre los demandantes y Platinum existen relaciones

---

[8] *Íd.*, pág. 648.
[9] *Íd.*, Anejo XII, págs. 650-674.
[10] *Íd.*, págs. 651. (Véase, además, *Íd.*, págs 661-669).
[11] *Íd.*, Anejo XIII, págs. 675-678.
[12] *Íd.*, pág. 676.
[13] *Íd.*, pág. 677.
[14] *Íd.*, Anejo XVII, págs. 694-698.
[15] *Íd.*, pág. 695.

contractuales mediante las cuales los demandantes proveen servicios médicos en salas contratadas por Platinum".[16] Así las cosas, el 4 de noviembre de 2020, el TPI declaró No Ha Lugar a la *Moción de Desestimación al Amparo de la R. 10.2* al entender que las alegaciones entabladas en la *Demanda* y *Demanda Enmendada* establecen una causa de acción plausible.[17]

Luego de varios trámites procesales, incluyendo la acumulación de Universal Insurance Company como aseguradora de SIM y la presentación de varias demandas enmendadas, el 20 de julio de 2021, Platinum presentó una *Moción de Desestimación de la Segunda Enmienda a Demanda al Amparo de la R. 10.2*.[18] Mediante la misma, alegó nuevamente que procedía la desestimación de la causa de acción de FE y del Dr. Estrada, al no existir una relación contractual entre Platinum y FE. Alegó que "[e]l hecho de que el Dr. Estrada, por consideraciones contributivas, reciba pagos a nombre de una entidad corporativa, no cambia la realidad contractual en cuanto a que el suscribiente del contrato con Platinum era Dr. Estrada y no FE Medical".[19] Dicha *Moción* fue denegada, determinación que fue confirmada el 11 de febrero de 2022 por nuestro panel hermano en el caso KLCE202101469.[20]

Luego de varios trámites procesales, el 15 de febrero de 2024, Platinum presentó una *Moción de Sentencia Sumaria* en la que alegó que la cancelación del contrato entre Platinum y el Dr. Estrada fue debido a una justa causa.[21] Para concluir aquello, Platinum hizo referencia al *Contrato de Servicios Médicos* entre Platinum y el Dr.

---

[16] *Íd.*
[17] *Íd.*, Anejo XVIII, págs. 699-700.
[18] *Íd.*, Anejo XXIII, págs. 726-740.
[19] *Íd.*, pág. 727.
[20] *Íd.*, Anejo XVII, págs. 759-777. (Panel integrado por su presidente, el Juez Rivera Colón (juez ponente), el Juez Rodríguez Flores y el Juez Adames Soto). (Reconsideración denegada el 9 de marzo de 2022. *Íd.*, Anejo XXVIII, pág. 781).
[21] *Íd.*, Anejo I, págs. 1-336.

Estrada.[22] La Cláusula 1.3 del referido *Contrato* detalla las causas que justifican la cancelación del mismo. Esta dispone que:

> El/La Médico(a) reconoce, entiende y acepta que este contrato puede ser terminado durante la vigencia del mismo por, entre otras razones, el que cese la necesidad de los servicios contratados: que el/la Médico(a) incurran en actos que constituyan conflicto de interés, en conducta que afecte la imagen de la empresa; que el/la Médico(a) no cumpla con los servicios contratados, sus obligaciones y/o las disposiciones de este Contrato, incluyendo pero no limitado a lo dispuesto en la Sección 6 del mismo; reorganización; cierre total, temporero o parcial de [Platinum]; que la licencia de el/la Médico(a) para practicar pierda vigencia por cualquier razón o que sea suspendida, revocada o limitada en cualquier forma; que el/la Médico(a) se encuentre incurso en una conducta no profesional o poco ética por cualquier junta, instrucción, organización, o sociedad profesional que tenga jurisdicción para juzgar su conducta; que el/la Médico(a) no cumpla con los horarios de servicio establecidos por [Platinum]; que se entable una acción judicial o administrativa en contra de el/la Médico(a); que expire o se cancele la póliza de seguro de responsabilidad profesional de manera de que este quede sin dicha cubierta; que sea suspendido de los programas de Medicare y/o Medicaid; así como por cualquier otra causa reconocida por ley.[23]

Platinum alegó que el 3 de abril de 2020, SIM le retiró la confianza al Dr. Estrada mediante una carta escrita y dirigida al presidente de Platinum, el doctor Jorge Mejías Valle.[24] Mediante la misma, SIM le informó a Platinum que "el Dr. Francisco M. Estrada Fernández no puede realizar turnos en nuestras facilidades".[25] Dicha conclusión fue el resultado de un incidente entre el Dr. Estrada con los padres de un paciente de un (1) año. Alegadamente, el 1 de abril de 2020, el padre acudió a la sala de emergencias del SIM de Barranquitas, donde se encontraron con el Dr. Estrada. Este conversó con el papá del niño y le recomendó que se fuera al Hospital Menonita de Aibonito para no tener que hacer una transferencia y que en el SIM no había un laboratorio. No obstante, sostuvo la carta que el padre insistió en que su hijo fuese atendido en el SIM. "Sin

---

[22] *Íd.*, págs. 26-34.
[23] *Íd.*, pág. 27.
[24] *Íd.*, págs. 260-261.
[25] *Íd.*, pág. 260.

embargo, el Dr. Estrada siempre lo atendió de forma irrespetuosa. En todo momento, el médico hizo sentir al padre como si él hubiese sido irresponsable por llevar su niño a nuestro centro. Demás está decir que el padre realizó denuncias públicas en contra del médico y nuestra empresa".[26]

Como resultado de esta carta, el 8 de abril de 2020, Platinum le informó al Dr. Estrada de la carta enviada por parte de SIM y del relevo de sus turnos en las salas de emergencias de los SIM de Barranquitas y Orocovis.[27] No obstante, le informó en aquella comunicación que "[n]os encontramos trabajando para añadir proyectos adicionales a nuestra Facultad Médica, los cuales estaremos contando con usted".[28]

A base de ambas comunicaciones y de la Cláusula 1.3 del *Contrato de Servicios Médicos*, Platinum arguyó que "las cláusulas de contratación entre Platinum y Dr. Estrada permiten la recisión del contrato por violaciones a los términos de la contratación de Platinum con SIM[…]".[29] Por otro lado, alegó que las Cláusulas 6.10, 6.11 y 7.3 del *Contrato de Servicios Médicos* impiden al Dr. Estrada de incoar acción legal, judicial o administrativa en contra de Platinum, ya sea de manera directa o como reclamante de coparte o tercero.[30] Por estas razones, Platinum arguyó que procedía la resolución del caso por la vía sumaria, en contra del Dr. Estrada.

En cuanto al codemandante FE, Platinum reiteró nuevamente que procedía la desestimación de su causa de acción puesto que no existía una relación contractual entre FE y Platinum. "En ninguna parte de sus 9 páginas, [el *Contrato de Servicios Médicos* contiene] referencia alguna a FE Medical".[31] "El hecho de que Dr. Estrada por

---

[26] *Íd.*
[27] *Íd.*, pág. 259.
[28] *Íd.*
[29] *Íd.*, pág. 12.
[30] *Íd.*, págs. 32-33.
[31] *Íd.*, pág. 10.

consideraciones contributivas, a su ruego, Platinum emitió pagos a nombre de una entidad corporativa, no cambia la realidad contractual de que el suscribiente del contrato con Platinum era Dr. Estrada y no FE Medical".[32] En consecuencia, arguyó que FE no tenía legitimación activa para instar la acción.[33]

Tras las comparecencias de las partes, el 13 de mayo de 2024, el TPI emitió una *Resolución* en la que declaró No Ha Lugar a la *Moción de Sentencia Sumaria* de Platinum.[34] El 29 de mayo de 2024, Platinum presentó oportunamente una *Reconsideración* en la que arguyó que erró el TPI al no disponer de la totalidad del caso mediante la vía sumaria.[35] En particular, arguyó que el TPI no hizo determinación alguna en cuanto a la Cláusula 6.11 del *Contrato de Servicios Médicos*, ni el hecho de que no existía un contrato válido entre FE y Platinum.[36]

Atendiendo la *Resolución*, el 24 de junio de 2024, el TPI emitió una *Sentencia Parcial*.[37] Ante los argumentos de Platinum, el TPI reconsideró su determinación en cuanto a FE y procedió a desestimar la causa de acción de la entidad corporativa. Concluyó que "no hay controversia en que Platinum nunca tuvo un contrato con FE, sino con el Dr. Francisco Estrada Fernández".[38]

En cuanto a la contención de Platinum con relación al Dr. Estrada, el TPI declaró No Ha Lugar. Primero atendió los argumentos sobre los relevos de responsabilidad de las Cláusulas 6.10, 6.11 y 7.3 del *Contrato de Servicios Médicos*. Sobre esto, el TPI entendió que las referidas Cláusulas se refieren a cualquier "causa de acción entablada en foro judicial o administrativo por el desempeño

---

[32] *Íd.*
[33] *Íd.*, pág. 12.
[34] *Íd.*, Anejo VII, págs. 611-629.
[35] *Íd.*, Anejo IX, págs. 631-637.
[36] *Íd.*, págs. 635-636.
[37] *Íd.*, Anejo X, págs. 638-645. Notificada y archivada en autos el 24 de junio de 2024.
[38] *Íd.*, pág. 645.

profesional del Doctor, excepto cuando la reclamación surja de la negligencia exclusiva de Platinum. No se trata de una reclamación de incumplimiento con ese contrato y daños y perjuicios como en el presente caso".[39]

Por otro lado, se rehusó a disponer de la totalidad de la causa de acción del Dr. Estrada puesto que, a su juicio, existen controversias sobre hechos esenciales y medulares que impiden la resolución por la vía sumaria.[40] Resolvió que nada en el *Contrato de Servicio Médico* se podía entender como justa causa para su cancelación el hecho de que SIM lo solicitase.[41] La Cláusula 6.1 dispone que se podía cancelar si el Dr. Estrada incumplía con los "By Laws" de SIM, y que no se ha provisto en cuanto a que constituyen los "By Laws" o cuales son las violaciones a los mismos.[42]

Según entendió el TPI, Platinum alegó como otra causa para la cancelación del *Contrato de Servicios Médicos* el hecho de que al SIM retirar su confianza en el Dr. Estrada, no tenía sala de emergencia para donde ubicarlo, por lo que el *Contrato* se quedó sin causa. El TPI determinó que el *Contrato de Servicios Médicos* no limitaba las labores del Dr. Estrada únicamente a las salas de emergencias del SIM, sino a aquellas contratadas con Platinum.[43] Por lo tanto, existía controversia sobre si Platinum realmente no tenía donde ubicar al Dr. Estrada.[44]

Por estas razones, el TPI declaró No Ha Lugar a la *Reconsideración* en cuanto al Dr. Estrada. Inconforme con la determinación del TPI, el 24 de julio de 2024, Platinum presentó el

---

[39] *Íd.*, pág. 640.
[40] *Íd.*
[41] *Íd.*, págs. 641-642.
[42] *Íd.*, pág. 642.
[43] *Íd.*, págs. 642-643.
[44] *Íd.*, pág. 643.

recurso ante nuestra consideración. En el mismo, presentó como único señalamiento de error:

> **ERRÓ EL HONORABLE TPI AL CONCLUIR QUE NO PROCEDÍA DICTAR SENTENCIA SUMARIA A FAVOR DE LA CODEMANDADA/APELANTE PLATINUM DADO QUE AL EXAMINAR LAS CLAUSULAS DEL CONTRATO ENTRE PLATINUM Y DR. ESTRADA, EXISTEN CONTROVERSIAS SOBRE HECHOS ESENCIALES QUE AMERITAN QUE SE RESUELVAN EN UN JUICIO PLENARIO Y NO MEDIANTE EL MECANISMO DE LA SENTENCIA SUMARIA.**

## II.

El auto de certiorari es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior." *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). Trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de Procedimiento Civil, *supra,* R. 52.1.

La Regla 52.1 de Procedimiento Civil dispone que un recurso de certiorari sólo será expedido cuando se recurra de una resolución u orden bajo las Reglas 56 (Remedios Provisionales) y 57 (Injunctions) de Procedimiento Civil o una denegatoria de una moción de carácter dispositivo. Además de lo anterior, y a modo de excepción, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre: 1) la admisibilidad de testigos de hecho o de peritos esenciales; 2) asuntos relativos a privilegios probatorios; 3) anotaciones de rebeldía; 4) casos de relaciones de familia; 5) casos que revistan interés público; o, 6) cualquier otra situación en la cual esperar la apelación constituiría un fracaso irremediable de la justicia.

Una vez adecuadamente presentado un recurso de certiorari, el Tribunal de Apelaciones deberá ejercer su discreción y evaluar la petición tomando en consideración los criterios enumerados en la Regla 40 del Tribunal de Apelaciones, *supra*, R. 40. Deberá evaluar:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Aun así, cuando el Tribunal de Apelaciones determina, en su sana discreción, denegar la expedición de un recurso de certiorari, no tiene que fundamentar su determinación. Reglas de Procedimiento Civil, *supra*, R. 52.1.

**III.**

Luego de un análisis completo del expediente, las posturas de las partes y la controversia presentada, denegamos expedir el auto de *certiorari*. Al amparo de la Regla 40 del Tribunal de Apelaciones, *supra*, R. 40, consideramos que la etapa en la cual se encuentran los procedimientos no es la más propicia para su consideración. Entendemos que la determinación del TPI no adolece de prejuicio, parcialidad o error manifiesto de hecho o derecho que amerite nuestra intervención.

**IV.**

Por los fundamentos discutidos, denegamos expedir el auto solicitado. En consecuencia, devolvemos el caso al TPI para que continúen los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones